# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CESSNA FINANCE CORPORATION,

*Plaintiff,*

vs.

Case No. 18-1095-EFM-TJJ

JS CJ3, LLC and JETSUITE, INC.,

*Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants JS CJ3, LLC ("JS") and Jetsuite, Inc.'s ("Jetsuite") Motion to Dismiss or Stay Cessna Finance Corporation's ("Cessna Finance") claim for breach of contract. For the following reasons, Defendants' Motion to Dismiss or Stay (Doc. 8) is denied.

### I.  Factual and Procedural Background

Simply stated, this case involves a contract dispute between Cessna Finance and JS and Jetsuite. JS borrowed money from Cessna Finance to purchase eight aircraft from Cessna Aircraft Company ("Cessna Aircraft"). JS executed eight Promissory Notes and Security Agreements memorializing its obligations to Cessna Finance, and Jetsuite executed documents promising to be a guarantor of JS's financial obligations. Cessna Finance alleges that Jetsuite and JS failed to make payments pursuant to these agreements and are now in breach of contract.

Eight days before Cessna Finance filed its breach of contract claim against Defendants in Kansas, JS and Jetsuite filed their own lawsuit in California Superior Court ("the California lawsuit") against Textron Aviation, Inc. ("Textron"),[1] Cessna Aircraft, Cessna Finance, and Don Beverlin. In the California lawsuit, JS and Jetsuite alleged that Beverlin—acting on behalf of Cessna Aircraft and Cessna Finance—fraudulently induced JS and Jetsuite into purchasing the aircraft by failing to disclose certain defects common to the aircraft. Based on this alleged fraudulent conduct, JS and Jetsuite filed suit in California seeking, among other remedies, recession of the purchase contracts entered into with Cessna Aircraft, as well as recession of the Promissory Notes, Security Agreements, and Guaranties that are at issue in this case.

When Defendants filed the present Motion to Dismiss or Stay, all the parties in the Kansas lawsuit—JS, Jetsuite, and Cessna Finance—were also parties to the California lawsuit. But that has since changed. The California Superior Court determined that it lacked personal jurisdiction over Cessna Finance and dismissed the company from the California lawsuit. JS and Jetsuite have appealed that ruling, and their appeal is still waiting to be heard by the California Court of Appeals.

On March 12, 2019, this Court conducted a hearing on Defendants' Motion. At that hearing, JS and Jetsuite acknowledged that their first two arguments for dismissal—one based on California's compulsory counterclaim rule and the other on the first-filed lawsuit doctrine—were contingent on Cessna Finance being a party to the California lawsuit. Accordingly, because Cessna Finance has been dismissed from the California lawsuit, JS and Jetsuite shifted their argument exclusively to their request for a stay under the *Colorado River* doctrine. JS and Jetsuite urge the Court to stay this case until JS and Jetsuite's fraud claims in California are resolved.

---

[1] Textron is the successor in interest to Cessna Aircraft Company.

Cessna Finance, in response, argues that the California lawsuit has no bearing on its claims against Defendants in Kansas. Furthermore, Cessna Finance argues that Kansas is the only appropriate jurisdiction to litigate its claims, based on a forum selection clause contained in the parties' contracts.

## II. Legal Standard

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."[2] Indeed, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."[3] In *Colorado River*, however, the Supreme Court held that under limited circumstances it may be appropriate for a federal court to stay or dismiss a lawsuit based on parallel proceedings in state court.[4] Federal and state suits are parallel when "substantially the same parties" are litigating "substantially the same issues" in both cases.[5] Courts must "examine the state proceedings as *they actually exist* to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction."[6] "If the cases are not parallel, the court must exercise jurisdiction. On the other hand, 'if a federal court determines the state and federal proceedings *are* parallel, it must

---

[2] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[3] *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (citation and quotations omitted).

[4] *Colorado River*, 424 U.S. at 817-18.

[5] *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) (citation omitted).

[6] *Id.* (internal citations and quotations omitted).

then determine whether deference to state court proceedings is appropriate under the particular circumstances.' "[7]

In *Colorado River*, the Supreme Court provided the following factors to consider in deciding if deference to a state court proceeding is appropriate under the circumstances: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction."[8] Additional factors to be considered include which forum's law governs the dispute, the reactive or vexatious nature of either lawsuit, and the adequacy of the state court action to protect the federal plaintiff's rights.[9] "No single factor is dispositive," and "any doubt should be resolved in favor of exercising federal jurisdiction."[10]

### III. Analysis

Before the Court can consider the *Colorado River* factors, it must first make a threshold determination that this lawsuit and the California lawsuit are parallel proceedings. As discussed above, proceedings are parallel when they involve substantially the same parties and raise substantially the same issues.[11] Defendants direct the Court to two District of Kansas decisions—

---

[7] *BNSF Ry. Co. v. Brown*, 250 F.R.D. 544, 546 (D. Kan. 2008) (quoting *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994)).

[8] *Fox*, 16 F.3d at 1082 (citing *Colorado River*, 424 U.S. at 818).

[9] *Id.* (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18, 23, 28 (1983)).

[10] *Id.* (citations omitted).

[11] *See Allen*, 68 F.3d at 403.

*Foxfield Villa Associates, LLC v. Regnier*[12] and *Health Care and Retirement Corp. of America v. Heartland Home Care, Inc.*[13]—that are pertinent to this topic.

In *Foxfield Villa*, the plaintiffs sued Bank of Blue Valley ("BOBV") in Kansas state court for conduct arising out of a financial transaction. Almost an entire year after initiating the state court action, the same plaintiffs filed suit in federal court, raising nearly identical claims against BOBV under Kansas common law, and adding a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Also named in the federal lawsuit were BOBV's Board of Directors, BOBV's holding company Blue Valley Ban Corp ("Ban Corp."), and members of Ban Corp.'s Board of Directors. The defendants in the federal lawsuit filed a motion to stay pursuant to *Colorado River*, and the district court granted the motion.[14]

The court in *Foxfield Villa* held that the state and federal proceedings were parallel—a conclusion neither party disputed. Although the court recognized that the parties were not identical in the state and federal proceedings, they were substantially the same. Importantly, both BOBV and the plaintiffs were parties to each lawsuit. The federal action involved additional defendants, but the court held that the plaintiffs "cannot avoid application of the *Colorado River* doctrine simply by adding additional parties in the federal suit—especially when the additional parties are so closely affiliated with the defendant present in both cases."[15]

---

[12] 918 F. Supp. 2d 1192 (D. Kan. 2013).

[13] 324 F. Supp. 2d 1202 (D. Kan. 2004).

[14] *Foxfield Villa*, 918 F. Supp. 2d at 1204.

[15] *Id.* at 1197.

Similarly, in *Heartland Home Care*, the court concluded that the state and federal proceedings were parallel. In that case, Heartland Home Care, Inc. ("Heartland") filed suit in Kansas state court against Health Care and Retirement Corporation of America ("HCRA") for unlawfully soliciting business under Heartland's name in violation of Kansas law. Almost three months after Heartland brought its suit, HCRA filed a complaint in federal court, alleging, among other things, trademark infringement against Heartland. Heartland sought dismissal of the federal action based on the ongoing proceedings in state court.[16]

As an additional wrinkle, and relevant to the inquiry here, HCRA argued that the state court proceeding was not against HCRA, but against one of its affiliates—Heartland Home Health Care and Hospice. But the court was unpersuaded by this argument. The court noted that HCRA and its affiliate were represented by the same law firm in both the state and federal proceedings. Through this law firm, HCRA and its affiliate both claimed ownership of the disputed "Heartland" trademark.[17] Even if HCRA was not technically a party to the state court action, HCRA had not showed that its interests in the state court lawsuit differed from those of its affiliate.[18] Indeed, the court later explained that either "HCRA and its affiliate are the same entity or HCRA does business in Kansas through its affiliate."[19] Based on the close relationship between HCRA and its affiliate, the court concluded that the state and federal lawsuits involved substantially the same parties.[20]

---

[16] *Heartland Home Care*, 324 F. Supp. 2d at 1203–04.

[17] *Id.* at 1204.

[18] *Id.*

[19] *Id.* at 1207.

[20] *Id.* at 1204-05.

Upon consideration of the relevant caselaw, the Court concludes that this case and the California lawsuit do not involve substantially the same parties, and are therefore not parallel proceedings. Unlike *Foxfield Villa*, where BOBV was a defendant in the state and federal lawsuit, Cessna Finance is a party only to this lawsuit. The Court recognizes that JS and Jetsuite hope the California Court of Appeals will reverse the order dismissing Cessna Finance from the California lawsuit, but the Court must examine the state proceedings as they actually exist, and Cessna Finance is not presently a party to that suit.

Neither is Cessna Finance sufficiently intertwined with either defendant in the California lawsuit to conclude that the parties are substantially the same. Cessna Finance—in contrast to HCRA in *Heartland Home Care*—has demonstrated that its interests differ from the interests of Textron and Cessna Aircraft. Even if Cessna Aircraft and Textron are found liable for having fraudulently induced JS and Jetsuite into executing the documents related to the sale of the aircraft, Cessna Finance would still be entitled to enforce the terms of its financial documents unless JS and Jetsuite demonstrate that those contracts were fraudulently induced as well. Put another way: proving that Cessna Aircraft fraudulently induced Defendants into purchasing the aircraft is different than proving Cessna Finance fraudulently induced Defendants into financing that purchase.

The Court concludes that the parties to the California lawsuit are not substantially the same as the parties to this lawsuit. Accordingly, the California lawsuit is not a parallel proceeding, and this case must be allowed to proceed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or Stay (Doc. 8) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 20th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE