# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CESSNA FINANCE CORPORATION,

*Plaintiff,*

vs.

JETSUITE, INC. and JS CJ3, LLC,

*Defendants.*

Case No. 18-1095-EFM-KGG

JETSUITE, INC. and JS CJ3, LLC,

*Counterclaim-Plaintiffs*,

v.

CESSNA FINANCE CORPORATION, et al.,

*Counterclaim-Defendants*.

**MEMORANDUM AND ORDER**

JetSuite, Inc. ("JetSuite") and JS CJ3, LLC ("JS") purchased several aircraft from Cessna Aircraft Company ("Cessna Aircraft"). JetSuite and JS financed that purchase through Cessna Finance Corporation ("Cessna Finance"). Cessna Finance sued JetSuite and JS, alleging that they defaulted on their payments. In turn, JetSuite and JS filed a counterclaim against Cessna Finance (and others) alleging that JetSuite and JS were fraudulently induced into purchasing the aircraft. JetSuite and JS seek monetary damages as well as rescission of the contracts arising from the purchase of the aircraft. This matter comes before the Court on Cessna Finance's Motion for

Judgment on the Pleadings on JetSuite and JS's Counterclaims (Doc. 53.) For the reasons stated below, the Motion is granted in part and denied in part.

## I. Factual and Procedural Background[1]

JetSuite is a California corporation that provides private jet charter services to its clients. In 2012, JetSuite began discussions with Cessna Aircraft to purchase several Cessna CJ3 Citation Jet Aircraft ("CJ3 Jets"). After months of negotiations—many of which took place in California— JetSuite entered into a Letter Agreement with Cessna Aircraft to purchase 15 of Cessna Aircraft's CJ3 Jets; the Letter Agreement stipulated that a separate Purchase Agreement would be executed for each aircraft. JetSuite formed JS, a limited liability company, to own the CJ3 Jets. Ultimately, JetSuite and JS took possession of eight CJ3 Jets, and Cessna Aircraft eventually canceled the remaining seven orders. JetSuite and JS borrowed money from Cessna Finance to finance the purchase of the eight CJ3 Jets. For each jet, JS was required to sign a Promissory Note, a Security Agreement, and a Cross-Default Agreement; JetSuite executed documents promising to be a guarantor of JS's financial obligations.

Unbeknownst to Jetsuite and JS at the time of the purchase, Cessna's CJ3 Jets were prone to leaking lavatory fluids, causing significant corrosion throughout the aircraft. In March 2017, JetSuite discovered that the CJ3 Jets it purchased from Cessna Aircraft had extensive damage from the leaky lavatories. JetSuite took one of the jets to Textron Aviation Service ("TAS"), and TAS estimated that the repairs would take more than a year and cost $1,215,000. By the end of 2017, four of Jetsuite's eight CJ3 Jets were downed and out of service due to lavatory-related corrosion.

---

[1] The facts are taken from JetSuite and JS's Amended Counterclaim (Doc. 31) and are accepted as true for the purposes of this ruling.

Although the lavatory-related corrosion was the most severe issue with the CJ3 Jets, JetSuite and JS allege other problems also plagued the aircraft.

Cessna Finance sued JetSuite and JS, alleging that they failed to make payments on their loans. JetSuite and JS filed a counterclaim seeking, among other remedies, rescission of the Letter Agreement and all of the Purchase Agreements, Promissory Notes, Guaranties, Security Agreements, and Cross-Default Agreements. In their counterclaim, JetSuite and JS allege that Cessna Aircraft and Cessna Finance knew about the CJ3 Jets' propensity for corrosion and concealed this fact during the parties' negotiations. JetSuite and JS allege that Donald Beverlin—a senior sales representative of Cessna Aircraft—was acting as both Cessna Aircraft and Cessna Finance's agent when he made multiple representations to JetSuite and JS about the CJ3 Jets' exceptional performance, reliability, and operational availability. In the hundreds of written, telephone, and in-person contacts between Beverlin and JetSuite, Beverlin never mentioned lavatory-related corrosion as a potential issue in the CJ3 Jets.

JetSuite and JS filed their counterclaim against Cessna Aircraft, Textron Aviation, Inc.,[2] Cessna Finance, and Beverlin (collectively "Counterclaim-Defendants"), alleging fraud by silence, fraudulent inducement, a violation of the California Business and Professions Code, and conspiracy. Although Cessna Aircraft and Cessna Finance are distinct legal corporations, JetSuite and JS allege that "each Counterclaim-Defendant was the agent, servant, representative, alter ego, and/or employee of each of the others" and that each was acting "with the permission, knowledge, consent and ratification of each of the others" in concealing the CJ3 Jets' defects. To support the alleged relationship between Cessna Finance and Cessna Aircraft, JetSuite and JS highlight that

---

[2] Textron is the successor in interest to Cessna Aircraft.

Textron's Vice President and Treasurer, Mary Lovejoy, also served as a director of Cessna Finance. Additionally, although Beverlin was an employee of Cessna Aircraft, JetSuite and JS allege that Beverlin was also acting as Cessna Finance's agent in coordinating the financing of the purchase.

Cessna Finance filed a Motion for a Judgment on the Pleadings on JetSuite and JS's counterclaims. Cessna Finance primarily relies on the language within the parties' contracts to negate JetSuite and JS's fraud claims.[3] Specifically, Cessna Finance points to the following provisions in the parties' contracts:

> Borrower acknowledges and agrees that lender has not authorized any third party including, without limitation, the manufacturer of the aircraft or the seller, their affiliates, officers, agents or employees, to make any representations, warranties, promises, guarantees, covenants or agreements, oral or written, concerning the aircraft or the loan on lender's behalf, and further acknowledges and agrees that no such third party is lender's agent and that lender shall not be bound by any such purported representations, warranties, promises, guarantees, covenants or agreements.
>
> . . .
>
> In Consideration of the loan, except where prohibited by applicable law, borrower completely waives and surrenders the right to pursue, assert or interpose any claim or defense against the lender, in law or in equity (including, without limitation, any right to recoupment, setoff or counterclaim), based on the aircraft's title, airworthiness, merchantability, condition, description, durability, value, fitness or suitability for any particular use or purpose, or upon allegations that lender is so closely or intimately connected with the manufacturers or prior owner(s) of the aircraft, or with any other third party whatsoever, including, without limitation, the seller or their affiliates, that lender knew or had reason to know of facts about the

---

[3] Cessna Finance attached the parties' contracts as exhibits to its Amended Complaint. Because Cessna Finance has moved for a judgment on the pleadings, and because the parties do not dispute the contract's authenticity, the Court will consider the contracts to rule on this motion. *See* Fed. R. Civ. P. 10 (c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Finley v. City of Colby, Kansas*, 2018 WL 3472816, at *2–3 (D. Kan. 2018) ("When a complaint includes exhibits, the Court may consider not only the complaint itself, but also attached exhibits. If the complaint refers to a document, but does not include it as an exhibit, the Court may consider a copy of the document provided by the defendant if the plaintiff does not dispute the document's authenticity and the document is central to the plaintiff's claims." (internal citations and quotations omitted)).

aircraft or its title (or the borrower's dealings with such manufacturers, prior owner(s) or third parties or about their general business practices) that would support a claim, counterclaim or defense by borrower against such manufacturers, prior owner(s) or third parties.

. . .

Borrower hereby acknowledges that it has selected the aircraft for purchase without any assistance or inducement from lender or lender's agents or employees and that except for the advancement of funds pursuant to the note and this agreement, lender has not been involved in the purchase decision or purchase transaction. Borrower agrees that lender has made no warranties whatsoever concerning the aircraft express or implied, whether of title, airworthiness, merchantability, condition, description, durability, value, fitness or suitability for any particular use or purpose or otherwise, and that lender, except where prohibited by applicable law, hereby disclaims all such warranties.

Cessna Finance moves the Court to grant judgment on the pleadings on all four of JetSuite and JS's counterclaims. The Court now rules as follows.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[4] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[5] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[6] All reasonable inferences

---

[4] Fed. R. Civ. P. 12(c).

[5] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

from the pleadings are granted in favor of the non-moving party.[7] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[8] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[9]

### III.    Analysis

**A.    Fraud by Silence**

JetSuite and JS allege that Cessna Finance committed fraud by remaining silent about known defects with the CJ3 Jets. The elements of a fraud by silence claim are: "(1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff."[10] Here, Cessna Finance disputes that JetSuite and JS adequately pleaded that Cessna Finance was under an obligation to communicate the alleged defects or that JetSuite justifiably relied on Cessna Finance to make those disclosures.

---

[7] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[8] *Id.* (quotations marks and citation omitted).

[9] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), abrogated on other grounds by *Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013).

[10] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1097 (2013) (citations omitted).

Under the second prong, JetSuite and JS must adequately plead that Cessna Finance had a duty to disclose the aircraft's alleged defects with them. "Whether a duty to disclose exists is determined by the facts and circumstances of each case."[11] " 'The question of what gives rise to a legal or equitable obligation to communicate is not always an easy question to resolve, but generally the duty must arise from a relationship existing between the parties when the suppression or concealment is alleged to have occurred.' "[12] "Kansas courts have recognized that a duty to disclose may arise in two situations: (1) there is a disparity of bargaining power or of expertise between two contracting parties; or (2) the parties are in a fiduciary relationship to one another."[13] Furthermore:

> [A] party to a transaction also has a duty to disclose material facts if he or she "knows that the other is about to enter into the transaction under a mistake as to such facts, and that the other, because of the relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts."[14]

With regard to the second prong, the Court concludes that JetSuite and JS have pleaded sufficient facts to survive dismissal. A party's obligation to disclose material information is highly fact-specific. Such an obligation may arise based on the customs of the trade or other objective circumstances, including a disparity in expertise between the parties. JetSuite and JS allege that Cessna Finance possessed superior knowledge and expertise with the CJ3 Jets. Cessna Finance disputes the truth of this allegation. But at this stage of the litigation, the Court is not interested in

---

[11] *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) (citing *Ensminger v. Terminix Int'l Co.*, 102 F.3d 1571, 1574 (10th Cir. 1996)

[12] *Id.* (emphasis added) (quoting *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 576 P.2d 674, 674 (1978)).

[13] *Great Plains Christian Radio*, 399 F. Supp. 2d at 1195 (citing *DuShane*, 576 P.2d at 678–79).

[14] *Meschke v. OrthAlliance, Inc.*, 2002 WL 1398635, at *1 (D. Kan. 2002) (quoting *OMI Holdings v. Howell*, 260 Kan. 305, 918 P.2d 1274 (1996)).

whether JetSuite and JS will ultimately prevail on this issue. It is enough that JetSuite and JS have alleged enough facts to make such a claim plausible.

Under the fourth prong, JetSuite and JS must have justifiably relied on Cessna Finance to communicate the material facts with them. Cessna Finance argues that JetSuite and JS cannot have reasonably relied on Cessna Finance to inform them about the alleged defects with the CJ3 Jets because the parties' contracts include disclaimers that JetSuite and JS selected the aircraft without any assistance, inducement, or promise of warranties from Cessna Finance. Cessna Finance cites *Boegel v. Colorado National Bank*[15] to support its contention that these broad disclaimers bars JetSuite and JS's claim as a matter of law.

In *Boegel*, the plaintiff purchased a 3,800-acre farm from a bank. The plaintiff later sued the bank, alleging that the bank knew of serious problems with the farm's irrigation system and concealed those problems from the plaintiff. The case went to trial, and the jury returned a verdict in the bank's favor. The plaintiff filed an appeal in which he argued: (1) that the trial judge erred in denying the plaintiff's motion for directed verdict and (2) that the trial judge improperly modified the fraud by silence pattern jury instructions. The Court of Appeals rejected both arguments and affirmed the result. However, the court (in dicta) also addressed an argument the bank raised as an alternative reason to affirm the defense verdict. The bank argued that the trial judge erred in allowing the case to proceed to trial because the parties' contracts placed the burden to inspect the property on the plaintiff.[16] The court gave some credence to this argument,

---

[15] 18 Kan. App. 2d 546, 857 P.2d 1362 (1993).

[16] Specifically, the agreement stated: "BUYER acknowledges purchasing hereunder *based on BUYER'S inspection* and not upon any express or implied warranty or representation made by SELLER or SELLER'S agents, it being specifically agreed that the Premises and all irrigation equipment thereon, including, but not necessarily limited to engines, pumps, gearheads and center pivot sprinklers being sold 'as is where is.' " *Id.* at 1364 (emphasis added).

explaining that because the bank bargained for limited liability and the plaintiff contractually assumed a duty to inspect the property, allowing the plaintiff "to proceed to trial on his claim of fraudulent concealment seems to nullify the limited liability for which the Bank bargained."[17] The court, however, determined that it need not reach the issue.[18]

Cessna Finance puts forth *Boegel*'s dicta for the proposition that, based on the contracts' disclaimers, it was unreasonable for JetSuite and JS to rely on Cessna Finance to communicate the alleged defects with the CJ3 Jets. The Court agrees that the disclaimers are some evidence (compelling evidence, even) that it was unreasonable for JetSuite and JS to rely on Cessna Finance to disclose the alleged defects. The reasonableness of JetSuite and JS's reliance, however, must be based on the entirety of the circumstances. *Boegel*'s rationale does not foreclose the possibility that—notwithstanding the contractual disclaimers—JetSuite and JS may nevertheless have justifiably relied on Cessna Finance to provide that information. Although it is perhaps unlikely that JetSuite and JS may prove justifiable reliance, that is not the question presently before the Court. The question is whether JetSuite and JS's claim should survive dismissal at this early stage of the litigation, and the Court holds that *Boegel* does not preclude JetSuite and JS from stating a claim. Therefore, Cessna Finance's Rule 12(c) Motion on the fraud by silence claim is denied.

**B.     Fraudulent Inducement**

The elements of a fraudulent inducement claim are:

(1) The defendant made false representations as a statement of existing and material fact, (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them, (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the

---

[17] *Id.* at 1368.

[18] *Id.* ("Because we find that the trial court did not err in denying plaintiff's motion for directed verdict or in modifying the PIK instruction, we need not reach this issue.").

other party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations.[19]

Cessna Finance argues that JetSuite and JS cannot prevail on a fraudulent inducement claim because it would require evidence that Cessna Finance made false representations about the quality of the CJ3 Jets, and the parol evidence rule "prohibits the admission of evidence of prior oral agreements or negotiations to vary the terms of a subsequent written agreement."[20] Although there is a well-established exception to the parol evidence rule for fraud,[21] Cessna Finance argues that JetSuite and JS cannot rely on the fraud exception because "[w]here the written contract directly contradicts the oral promises made during contract negotiations, the oral promise cannot be construed as fraudulent."[22] To support this position, Cessna Finance relies chiefly on two cases from the Kansas Supreme Court: *Edwards v. Phillips Petroleum Company*[23] and *Jack Richards Aircraft Sales, Inc. v. Vaughn*.[24]

In *Edwards*, the plaintiffs owned an interest in 40 acres of land on which the defendants owned a valid oil and gas lease. The parties entered into a unitization agreement to combine the plaintiffs' land with a third party's land. The plaintiffs alleged that they entered into this agreement because the defendants made oral representations to them that no additional wells would be drilled on the plaintiffs' land. The unitization agreement, however, gave the defendants not just the right

---

[19] *Stechschulte*, 298 P.3d at 1096.

[20] *Bailey v. Morgan Drive-Away, Inc.*, 647 F. Supp. 648, 650 (D. Kan. 1986).

[21] *Bailey v. Morgan Drive-Away, Inc.*, 647 F. Supp. 648, 650 (D. Kan. 1986) ("Exceptions to the [parol evidence] rule exist which allow such evidence to show that there had been misrepresentations or concealments as to what the contract contained or to show mutual mistake or fraud.").

[22] *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994) (citations omitted).

[23] 187 Kan. 656, 360 P.2d 23 (1961).

[24] 203 Kan. 967, 457 P.2d 691 (1969).

but also the obligation (for the benefit of the third party) to drill more wells on the plaintiffs' land.[25] In short: the plaintiffs alleged that the defendants orally agreed not to do the very thing they promised to do in the written contract. *Edwards* concluded that it was the plaintiffs who were attempting to perpetrate a fraud against the third party by reaching a side agreement with the defendants that would allow the plaintiffs to share in the oil profits from the development on the third party's land without reciprocal development on the plaintiffs' land.[26] In upholding the trial judge's dismissal of the plaintiff's claim, *Edwards* reasoned that the plaintiffs cannot bring a fraud claim that capitalizes on their own fraudulent conduct, explaining:

> If A, B and C enter into an express written contract, can A assert fraud against B in procuring A's execution of such contract for B's deceit in making an oral promise contemporaneously and directly at variance with the written contract, *where the overall effect of such oral promise, but for the deceit of B, was an independent conspiracy of A and B to commit a fraud upon C?* Clearly, the answer is in the negative.[27]

In Cessna Finance's other case, *Jack Richards*, the defendant agreed in writing to purchase an airplane from the plaintiff. Shortly after signing the contract, the defendant informed the plaintiff that he wanted to renege on the deal. The plaintiff eventually sued the defendant for breach of contract; after a bench trial, the plaintiff prevailed. The defendant appealed, arguing in part that the trial judge erred in excluding evidence that showed the defendant was fraudulently induced into signing the contract by the plaintiff's salesman. The defendant asserted that—based on the plaintiff's salesman's representations—the parties had "an oral understanding that either

---

[25] *Edwards*, 360 P.2d at 25.

[26] *Id.* at 28.

[27] *Id.*

-11-

party could cancel the agreement if he desired to do so."[28] *Jack Edwards* held that the trial judge properly excluded this evidence on the basis that the purported side agreement stated that the parties were not bound by the terms of the written agreement.[29] Essentially, "under [the] defendant's theory, the purchase order did not mean what it said and was a complete nullity."[30] This argument, according to the court, "is tantamount to saying [the] defendant was induced to execute the instrument, which on its face was binding, with full knowledge that neither party unequivocally and without reservation intended to perform in accordance with the terms of the writing."[31] The Court rejected defendant's fraud theory, stating that the defendant's evidence is only admissible under the fraud exception to the parol evidence rule if the evidence "tend[s] to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise in the writing."[32]

JetSuite and JS argue that *Edwards* and *Jack Richards* do not control this case, and the Court should instead follow the reasoning in the Kansas Court of Appeals' more recent decision in *Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Services, Inc.*[33] In *Miles*, the plaintiff and the defendant agreed to jointly provide services to a third-party client and share equally in the profits from that endeavor. After the parties completed the project, the defendant submitted two

---

[28] 457 P.2d at 695.

[29] *Id*. at 696.

[30] *Id.*

[31] *Id.*

[32] *Id.* (citations omitted); *see also Flight Concepts*, 38 F.3d at 1157 ("Where the written contract directly contradicts the oral promises made during contract negotiations, the oral promise cannot be construed as fraudulent.").

[33] 23 Kan. App. 2d 82, 927 P.2d 517 (1996).

invoices to the client. When the defendant received payment on the first invoice, the defendant paid the plaintiff its share of the profits. The defendant did not, however, inform the plaintiff that a second invoice had been submitted to the client. Additionally, the defendant procured from the plaintiff a written acknowledgment that the plaintiff had been paid in full, which included a provision that "this Release is not executed upon any statement or representation made by the party or parties hereby released."[34]

In *Miles*, the defendant argued (much like Cessna Finance here) that the parol evidence rule precluded the plaintiff from presenting evidence of the alleged fraud because the plaintiff signed a disclaimer stating that he signed the release without relying on any statements or representations by the defendant. The court was unpersuaded by that argument. As an initial matter, the court noted that no Kansas case had addressed specifically the effect of a disclaimer that a party did not rely on any statement or representation of the other contracting party. The court noted, however, that "the rule supported generally is that a provision in a written contract expressly excluding from consideration representations not included in the written contract *does not prevent proof of parol representations which amount to fraud in the inducement of the contract.*"[35] The court admonished that "the parol evidence rule should never be used to shield fraud."[36] To that end, the court reasoned that while the parol evidence rule bars evidence seeking to contradict or modify the terms in a contract, evidence of fraud is introduced for the purpose of

---

[34] *Id.* at 518.

[35] *Id.* (emphasis added) (citations omitted).

[36] *Id.*

showing "that no binding contract was ever made."[37] On this basis, *Miles* held "that parol evidence is admissible to show fraud in *the inducement of a contract* even where the contract contains a provision stating that the parties have not relied on any representations other than those contained in the writing."[38]

Here, the Court agrees with JetSuite and JS that *Miles* is the better authority to apply to the facts in this case. The *Edwards* Court heavily emphasized that the plaintiffs' fraud allegations, if true, meant that the plaintiffs were defrauding an innocent third party. This fact was an important part of *Edwards'* rationale and holding. That fact is not present here, so *Edwards* is distinguished. Likewise, *Jack Richards* is not controlling because the alleged fraudulent conduct—an oral agreement that a written agreement was not actually binding—represents "a promise *directly at variance* with the promise of the writing"[39] that the Court finds lacking in this case.

The Court deems *Miles* to be the appropriate authority to apply here. The parol evidence rule should not be used to shield fraudulent conduct. Like *Miles*, the Court holds that parol evidence is admissible to show fraud in the inducement of the parties' contracts, irrespective of the provision in those contracts that JetSuite and JS did not rely on Cessna Finance's representations.[40] JetSuite and JS are not attempting to modify the terms of the contract; rather, they are attempting to prove that, due to the alleged fraud, "no binding contract was ever made."[41] The Court holds that they can introduce parol evidence for that purpose.

---

[37] *Id.*

[38] *Id.* (emphasis added).

[39] *See Edwards*, 360 P.2d at 27.

[40] *See Miles*, 927 P.2d at 518.

[41] *Id.*

The Court also agrees with JetSuite and JS that it is premature to decide on a Rule 12 motion whether Cessna Finance can be held liable for the actions of Beverlin and Cessna Aircraft. JetSuite and JS broadly allege that Cessna Finance, Cessna Aircraft, and Beverlin are each "the agent, servant, representative, alter ego, and/or employee of each of the others" and that each was acting "with the permission, knowledge, consent and ratification of each of the others" in concealing the CJ3 Jets' defects. They also allege that Beverlin represented Cessna Finance as its "point person" in arranging the financing for the aircraft, including Beverlin exchanging dozens of emails with JetSuite regarding financing the purchase with Cessna Finance. As the Court has already stated, whether JetSuite and JS can prove its allegations remains to be seen, but the Court concludes that JetSuite and JS's fraudulent inducement claim is entitled to survive dismissal.

### C. California Unfair Competition Law ("UCL")

JetSuite and JS also bring a claim under California's UCL, alleging that Cessna Finance committed "unlawful, unfair, and fraudulent business acts or practices." In connection with its UCL claim, JetSuite and JS seek monetary damages, equitable relief, and attorneys' fees. Cessna Finance moves the Court to dismiss the UCL claim on the basis that the parties' contracts contain valid choice-of-law provisions stipulating that Kansas law applies in this case, thereby precluding any claim arising from California law.[42] JetSuite and JS argue that the choice-of-law provision is not controlling in this case for two reasons. First, JetSuite and JS assert that the choice-of-law

---

[42] Cessna Finance raises an additional argument in its Reply that California's UCL does not protect commercial parties in disputes involving a contractual business relationship; instead, the UCL only protects the general public or individual consumers. *See MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *10 (N.D. Cal. 2017) (citing *Linear Tech. Corp. v. Applied Materials, Ltd.*, 152 Cal. App. 4th 115, 135 (2007)). However, Cessna Finance failed to make this argument in its Motion and instead improperly waited until its Reply to raise it, so the Court will not consider this argument at this stage of the litigation. *Rajala v. Gardner*, 2012 WL 1606016, at *3, n. 18 (D. Kan. 2012) (declining to consider arguments raised for the first time in a Reply brief). Thus, the only issue for the Court to consider is whether the choice-of-law provision bars JetSuite and JS's UCL claim.

provision is narrow and does not apply to tort claims arising from pre-contract conduct.  Second, JetSuite and JS's counterclaim seeks to rescind the very contracts in which the choice-of-law provision is contained; meaning, if Cessna Finance fraudulently induced JetSuite and JS to finance the purchase, JetSuite and JS assert that the choice-of-law provision would be nullified along with the rest of the parties' agreements.

The Court first holds that the choice-of-law provision does apply to JetSuite and JS's UCL claim.  Each security agreement includes a provision stating: "This agreement shall be construed and interpreted in accordance with the laws of the state of Kansas (irrespective of such state's conflict of law principles) . . . ."[43]  JetSuite and JS argue that pursuing a claim under the UCL does not require the security agreement to be "construed" or "interpreted" because the claim is based on pre-contract representations, not the contract itself.  In contrast, Cessna Finance relies on an unpublished decision from the Kansas Court of Appeals, where the court concluded that  "[a] choice-of-law clauses establishing the law 'governing' *or 'construing'* the documents in which they appear, nonetheless, encompass tort claims directly related to or affecting the rights and obligations created or memorialized there."[44]  One of the cases the Kansas Court of Appeals favorably cited applied such a choice-of-law provision "to [a] fraud claim 'seeking to avoid enforcement of the contract itself.' "[45]  Based on this caselaw, and absent any compelling contradictory authority, the Court concludes that JetSuite and JS's UCL claim (despite sounding in tort) falls within the scope of the parties' choice-of-law provision.

---

[43] Emphasis and capitalization omitted.

[44] *Enter. Bank & Tr. v. Barney Ashner Homes, Inc.*, 2013 WL 1876293, at *16 (Kan. Ct. App. 2013) (citations omitted).

[45] *Id.* (*citing Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1140 (6th Cir. 1991)).

JetSuite and JS's second argument is that if Cessna Finance fraudulently induced JetSuite and JS into financing the purchase of the CJ3 Jets, the choice-of-law provision would be rescinded along with the rest of the financial agreements. However, under Tenth Circuit precedent: "[a] plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision."[46] At least two judges in this district have relied on this rule to dismiss claims that were contrary to an agreed-upon choice provision.[47] JetSuite and JS argue that the Tenth Circuit's discussion in *Riley* is dicta and therefore not binding on the Court, and they urge the Court to follow the rationale in *Aces Transportation, Inc. v. Ryan Transportation Services., Inc.*[48]

In *Aces*, the plaintiff challenged—much like JetSuite and JS here—the validity of the entire agreement at issue (including the choice-of-law provision contained in that agreement). The court in *Aces* determined that when a party seeks rescission of an entire contract, the merits of the rescission claim must be resolved before the court can decide whether to enforce the choice-of-law provision contained in that agreement.[49] But *Aces* did not consider the Tenth Circuit's *Riley* decision, relying instead on caselaw from the Ninth Circuit (presumably because the case originated in California and was transferred to the District of Kansas). As such, the Court rejects JetSuite and JS's contention that *Aces* is better authority than *Riley* and the District of Kansas

---

[46] *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992).

[47] *Textron Aviation, Inc. v. Superior Air Charter, LLC*, 2019 WL 6217912, at *3 (D. Kan. 2019) (applying *Riley* to a choice-of-law provision); *Hammond v. Alfaro Oil & Gas, LLC*, 2011 WL 976711, at *2 (D. Kan. 2011) (applying *Riley* to a choice-of-forum provision).

[48] 2006 WL 1487008, at *1 (D. Kan. 2006).

[49] *Id.* at *5.

decisions following *Riley*.⁵⁰ Even if *Riley*'s discussion should be characterized as dicta and not strictly binding on this Court,⁵¹ the Court concludes that *Riley* is more persuasive and will follow its rationale in this case.

Here, JetSuite and JS allege generally that Cessna Finance defrauded them, but none of JetSuite and JS's allegations are specific to the inclusion of the choice-of-law provision. Therefore, the Court will apply Kansas law to this dispute, meaning JetSuite and JS cannot proceed on a cause of action based exclusively on California law. Accordingly, the Court dismisses JetSuite and JS's UCL claim. If during the course of this litigation, however, JetSuite demonstrates that rescission of the entire agreement is the only proper remedy. The Court will entertain a motion to reconsider its ruling on this matter. In practical terms, the parties may deem the Court's ruling dismissing the UCL claim to be without prejudice. Cessna's Motion for Judgment on the Pleadings on the UCL claim is hereby granted.

**D.   Conspiracy**

As a final matter, Cessna Finance seeks dismissal of JetSuite and JS's civil conspiracy claim. Similar to its arguments previously addressed by the Court, Cessna Finance argues that the parol evidence rule bars any evidence that Cessna Finance had the requisite relationship with Beverlin or Cessna Aircraft for a civil conspiracy claim. To the extent Cessna Finance argues that JetSuite and JS cannot state a claim for a civil conspiracy because the parol evidence rule precludes such a claim, the Court rejects that argument for the reasons stated above. Cessna Finance also argues that if the underlying fraud claims are dismissed, the conspiracy claim should also be

---

⁵⁰ *See Textron Aviation,* 2019 WL 6217912, at *3; *Hammond*, 2011 WL 976711, at *2.

⁵¹ The Court deems it unnecessary to rule on this issue but acknowledges that this very argument was recently raised and rejected in this district. *See Textron Aviation*, 2019 WL 6217912, at *3.

dismissed.⁵² This argument is irrelevant, of course, because the Court denied Cessna Finance's motion to dismiss JetSuite and JS's fraud claims.

Cessna Finance also argues that JetSuite and JS failed to adequately state a claim for conspiracy. "The elements of a civil conspiracy claim are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.' "⁵³ Cessna Finance argues that JetSuite and JS failed to allege a meeting of the minds between Cessna Finance and Beverlin. The Court notes, however, that JetSuite and JS allege that Cessna Finance, in conjunction with Cessna Aircraft, sent Beverlin to negotiate with JetSuite to negotiate both the sale and the financing of the CJ3 Jets. They also allege that Cessna Finance, Cessna Aircraft, and Beverlin knew about the defects with the CJ3 Jets and agreed with each other to conceal those defects from JetSuite during negotiations. At this stage of the litigation, the Court holds that these allegations are adequate to plead conspiracy.⁵⁴

**IT IS THEREFORE ORDERED** that Plaintiff Cessna Finance Corporation's Motion for Judgment on the Pleadings (Doc. 53) is **GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion regarding the California Unfair Competition Law claim is granted; and the Motion regarding fraud by silence, fraudulent inducement, and conspiracy claims is denied.

---

⁵² *Hokanson v. Lichtor*, 5 Kan. App. 2d 802, 626 P.2d 214, 217 (1981).

⁵³ *Kearns v. New York Cmty. Bank*, 2017 WL 1148418, at *8 (Kan. Ct. App. 2017) (quoting *Citizens State Bank v. Gilmore*, 226 Kan. 662, 603 P.2d 605, 613 (1979)).

⁵⁴ *Near v. Crivello*, 673 F. Supp. 2d 1265, 1274–75 (D. Kan. 2009).

**IT IS SO ORDERED**.

Dated this 28th day of January, 2020.

                                            ERIC F. MELGREN
                                            UNITED STATES DISTRICT JUDGE