IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CESSNA FINANCE CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JETSUITE, INC. and JS CJ3 LLC, | ) |
| | ) |
| Defendants. | ) |
| —————————————— | ) Case No.: 18-1095-EFM-KGG |
| | ) |
| JETSUITE, INC. and JS CJ3 LLC, | ) |
| | ) |
| Counterclaim Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CESSNA FINANCE CORP., *et al.*, | ) |
| | ) |
| Counterclaim Defendants, | ) |
| —————————————— | ) |

**MEMORANDUM & ORDER
ON REMAINING ISSUES FROM MOTIONS TO COMPEL**

The above-captioned case relates to failure to pay for certain aircraft and the subsequent abandoning thereof. (Doc. 1, at 6.) A companion case (hereinafter "the Textron case") relating to the failure to pay on maintenance agreements on these aircraft is also pending before the District Court. (*See* No. 18-1187, Doc. 1, at 2-3.)

1

On February 13, 2020, the Court held an in-person hearing relating to three overlapping discovery motions pending in these two cases. (*See* Docs. 81, 95, 117, 132; No. 18-1187, Docs. 92, 122, 148.) At the hearing, the Court resolved issues from the first motion to compel (Doc. 81) relating to general objections; documents concerning corrosion in the fuselage, wing, or lavatory area of any CJ3 aircraft; communications with Don Beverlin; and documents created after July 22, 2013 (Doc. 132). Corresponding issues were resolved as to the second Motion to Compel in this case (Docs. 95, 132) as well as the initial motion to compel in the Textron case (No. 18-1187, Docs. 92, 148). In addition, the Court resolved a second Motion to Compel in the Textron case (No. 18-1187, Docs. 125, 147) and the motions to extend the expert disclosure deadlines in both cases (Docs. 128, 130; No. 18-1187, Docs. 140, 147). Defendants' Motion to Amend Answer and Counterclaim in the present case (Doc. 131) was withdrawn at the request of the Defendants (Doc. 131).

This Order resolves the issue that remains from the two motions to compel in the present case (Docs. 81, 95) after the Court's oral rulings from the bench at the hearing.[1] Cessna Finance and Textron argue that certain of their communications with each other are protected by a "joint defense" and that they

---

[1] A separate Order will be filed in the Textron case as to the corresponding issue remaining from the motion to compel pending therein (No. 18-1187, No. 92).

need not even provide a privilege log for such documents. (Doc. 82, at 9; Doc. 96, at 12.)

## ANALYSIS

I. **Legal Standards.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018). As to the present motion, the parties responding to the discovery requests at issue are claiming privilege based on the join defense doctrine.

Typically, the protections afforded by the attorney-client privilege and work-product doctrine are waived when the party claiming the protection voluntarily discloses the information at issue to a third-party. *See **U.S. v. Ary***, 518 F.3d 775,

783 (10th Cir. 2008) (citation omitted). However, third-party disclosure of information does not waive the protections if a "joint defense" relationship exists. ***In re Grand Jury***, 156 F.3d 1039, 1042 (10th Cir. 1998).

The duty to establish the existence of a joint-defense privilege is on the party asserting the privilege. ***Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.***, No 05-2164-MLB, 2007 WL 950282, at *9 (D. Kan. Mar. 26, 2007). To do so, "the proponent of the privilege must first establish either the attorney-client or work-product privileges, and then must also demonstrate: (1) the documents were made in the course of a joint-defense effort; and (2) the documents were designed to further that effort." *Id.*; *see also* ***In re Grand Jury***, 156 F.3d at 1043; ***Beltran v. InterExchange, Inc.***, No. 14-CV-03074-CMA-CBS, 2018 WL 839927 at *4 (D. Colo. Feb. 12, 2018) (unpublished opinion) (discussing "common interest doctrine also known as the joint defense doctrine" and stating that the doctrine "is designed 'to protect communications between co-defendants or co-litigants'") (citations omitted)).

"A common commercial interest and a common desire for the same outcome in a legal matter are not sufficient to establish a common interest." ***Beltran v. Interexchange, Inc.***, 2018 WL 839927, *4 (D. Colo. Feb. 12, 2018) (citing ***In re Urethane Antitrust Litigation***, MDL No. 1616, 2013 WL 4781035, *2 (D. Kan. Sept. 5, 2013) and ***United States v. Hudson***, No. 13-20063-01-JWL, 2013 WL

4

4768084, *2 (D. Kan. Sept. 5, 2013)); *see also* **Servicemaster of Salina, Inc. v. United States**, No. 11-1168-KHV-GLR, 2012 WL 1327812 at *3 (D. Kan. April 17, 2012) (holding that the common interest doctrine "does not apply when the parties merely have similar [as opposed to identical] legal interests or when the interests are solely commercial or business in nature.") (citation omitted).

> The common interest doctrine can only exist where there is an applicable underlying privilege. The common interest doctrine is not a separate privilege, but an exception to waiver of the attorney-client privilege. The common interest doctrine thus acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests. For the common interest doctrine to attach, 'most courts . . . insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.' 'The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'

**United States Fire Ins. Co. v. Bunge N. Am., Inc.**, No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006) (citations omitted).

JetSuite argues that Cessna Finance has failed to establish the joint defense privilege, citing **Bunge N. Am., Inc.**, *supra*. (Doc. 82, at 9-10.) JetSuite contends that Cessna Finance's communications with the Textron entities "are at issue for a number of reasons, not least of all because JetSuite alleges a conspiracy among those entities to conceal CJ3 corrosion from JetSuite." (*Id.*, at 9.) JetSuite states

that Textron, Inc. and TAI "were necessary signatories" to the Cessna Finance financing, "and that TAI agreed to pay 10% of the loan balance upon default." (*Id.*)  JetSuite further contends that Cessna Finance objects to production of the communications with Textron contending they are privileged, without identifying the communications in a privilege log.  (*Id*.)

JetSuite correctly points out that the burden is on Cessna Finance and/or Textron to establish the application of the privilege.  *See* ***Servicemaster of Salina***, 2012 WL 1327812 at *3 (holding that "[b]ecause the party asserting privilege has 'the burden to establish that waiver has not occurred,' that party also has the burden to show the applicability of the common interest doctrine") (citing ***Johnson v. Gmeinder***, 191 F.R.D. 638, 643 (D.Kan. 2000)).  JetSuite contends that Cessna has "abjectly [f]ailed" in this regard "[b]ecause it refuses to identify the basis for its joint defense claim or to even identify on a privilege log the documents being withheld."  (*Id*., at 11.)

Cessna Finance counters that "litigation counsel for the Counterclaim-Defendants are entitled to share confidential, privileged communications between and among themselves concerning the ongoing litigation, and JetSuite, the adverse party, has no legitimate claim to discover those privileged materials."  (Doc. 103, at 13.)  It contends that it agreed to provide a privilege log of

> all privileged communications before February 21, 2018 (a day after JetSuite filed essentially an identical suit in

> California against the same parties), and counsel
> understood JetSuite to agree that communications on or
> after February 21, 2018, between the lawyers for both
> parties or between the lawyers and their clients, did not
> need to be logged.

(*Id.*, at 15.) Cessna Finance continues that it

> requests a categorical approach previously approved by
> this Court. In ***Raymond v. Spirit AeroSystems Holdings***,
> 319 F.R.D. 334 (D. Kan. 2017), the Court discussed the
> issue of a burdensome privilege log and found '[t]his
> 'categorized' method of production is referenced
> specifically in the comment to the 1993 amendment to
> Rule 26(b)(5) and the Thermal opinion, and would ease
> Defendants' burden of production while providing the
> Plaintiffs (and ultimately, if necessary, the Court) enough
> information to assess the validity of the privilege
> objection.' *Id.* at 340–41. Even though [Cessna Finance]
> does not believe even this method is necessary or
> appropriate, as noted below, it has provided a privilege
> log to JetSuite that includes a categorized disclosure of
> what is being withheld.

(*Id.*, at 16.)[2]

Cessna Finance contends that the "identical legal interest" requirement "is easily met [in this instance] because based on the allegations asserted by JetSuite,

---

[2] In the second Motion to Compel, JetSuite contends that Textron "refuses to produce many communications with [Cessna Finance] on the grounds they are privileged, then refuses to identify those communications on a privilege log." (Doc. 96, at 12.) JetSuite argues that because Textron "refuses to identify the basis for its joint defense claim or even to identify on a privilege log the documents being withheld, [it] has abjectly failed to meet its burden." (*Id.*, at 14.) JetSuite continues that because Textron "refused to produce a log at the appropriate time, the Court should rule [it] has waived any joint-defense privilege claim as to its communications with [Cessna Finance] and order all of its communications with [Cessna Finance] be produced. (*Id.*)

7

it is hard to imagine a scenario where two parties could have more identical legal interests." (Doc. 103, at 13-14.) At the hearing, the Court voiced its skepticism that Cessna Finance and Textron can establish a joint defense effort when the primary position of Cessna Finances is that it is not liable for the actions of Textron – *e.g.*, if Textron lied to the buyers about the airplanes in question, Cessna Finance would not be at fault for this. The Court indicated that Cessna Finance and Textron appeared to take the position that they are clearly separate. Nothing at the hearing, in the Court's subsequent research, or in supplementation supplied by the parties has changed the Court's understanding of the dynamic between Cessna Finance and Textron – they are clearly separate entities that do not share an <u>identical</u> legal interest in this litigation.

As such, Cessna Finance and Textron have failed to carry their burden to show a common legal interest between them in the present litigation. Even if they share a common legal interest in defending against the claims of JetSuite, Cessna Finance and Textron have "not shown that they shared an identical interest in securing legal advice for those matters." ***Servicemaster of Salina***, 2012 WL 1327812, at *4. "Differences between the parties in the legal interest make the interests non-identical, and thus make the common interest exception inapplicable." *Id*.

Cessna Finance and Textron have arguably established a "common desire for the same outcome" of this litigation. *See* **Beltran**, 2018 WL 839927 at * 4; ***Servicemaster of Salina***, 2012 WL 1327812 at *3. This is not, however, sufficient to establish a common interest as necessary for application of the joint defense doctrine. *Id*. Simply stated, to the extent Cessna Finance and/or Textron have waived the protections of the attorney-client privilege and/or the work product doctrine by sharing information with persons outside of the protection, they cannot use the joint defense privilege as an exception to the underlying waiver(s).

**IT IS THEREFORE ORDERED** that the joint defense objections raised by Cessna Finance and Textron are **overruled** and Defendant's Motions to Compel (Docs. 81 and 92) are **GRANTED in part** as more fully set forth herein.

IT IS SO ORDERED.

Dated this 28th day of February, 2020, at Wichita, Kansas.

                                       S/ KENNETH G. GALE
                                       HON. KENNETH G. GALE
                                       U.S. MAGISTRATE JUDGE