# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CESSNA FINANCE CORP., | ) |
| Plaintiff, | ) |
| v. | ) |
| JETSUITE, INC. and JS CJ3 LLC, | ) |
| Defendants. | ) Case No.: 18-1095-EFM-KGG |
| JETSUITE, INC. and JS CJ3 LLC, | ) |
| Counterclaim Plaintiffs, | ) |
| v. | ) |
| CESSNA FINANCE CORP., *et al.*, | ) |
| Counterclaim Defendants, | ) |

## MEMORANDUM & ORDER ON
## MOTIONS FOR CLARIFICATION AND RECONSIDERATION

Now before the Court are the Motions for Clarification and Reconsideration filed by Textron (Doc. 140) and Cessna (Doc. 141) in the above-captioned matter. For the reasons more fully set forth herein, the motions are **GRANTED** as to their requests for clarification and **DENIED** as to their requests for reconsideration.

## BACKGROUND

1

The above-captioned case relates to failure to pay for certain aircraft and the subsequent abandoning thereof. (Doc. 1, at 6.) A companion case (hereinafter "the Textron case") relating to the failure to pay on maintenance agreements on these aircraft is also pending in the District Court. (*See* No. 18-1187, Doc. 1, at 2-3.)

On February 13, 2020, the Court held an in-person hearing relating to three overlapping discovery motions pending in these two cases, where various issues were resolved. (*See* Docs. 81, 95, 117, 132; No. 18-1187, Docs. 92, 122, 148.) Most issues were resolved by the undersigned Magistrate Judge from the bench. The Court issued a written Order (Doc. 135) resolving the issue that remained from the two motions to compel in the present case (Docs. 81, 95) – whether certain communications between Cessna Finance and Textron are protected by a "joint defense" and that they need not even provide a privilege log for such documents. (Doc. 82, at 9; Doc. 96, at 12.) It is that Order that Cessna and Textron are now asking the Court to reconsider or clarify.[1] (*See* Docs. 140, 141.)

During the hearing, the undersigned Magistrate Judge

> voiced [his] skepticism that Cessna Finance and Textron
> can establish a joint defense effort when the primary

---

[1] The Court adopted and incorporated this analysis and determination as to the related motion to compel in the Textron case. (*See* No. 18-1187, Doc. 92; Doc. 150 (2/28/20 text entry incorporating analysis from underlying Order in the present case).) Textron has moved to clarify and reconsider this Order in the Textron case as well. (No. 18-1187, Doc. 151.)

2

> position of Cessna Finances is that it is not liable for the actions of Textron – e.g., if Textron lied to the buyers about the airplanes in question, Cessna Finance would not be at fault for this. The Court indicated that Cessna Finance and Textron appeared to take the position that they are clearly separate.

(Doc. 135, at 8.) In its written Order on the motions, the Court noted that

> [n]othing at the hearing, in the Court's subsequent research, or in supplementation supplied by the parties has changed the Court's understanding of the dynamic between Cessna Finance and Textron – they are clearly separate entities that do not share an <u>identical</u> legal interest in this litigation.

(*Id*. (emphasis in original).)

The Court thus held that Cessna Finance and Textron failed to carry their burden to show a common legal interest between them in the present litigation.

> Even if they share a common legal interest in defending against the claims of JetSuite, Cessna Finance and Textron have 'not shown that they shared an identical interest in securing legal advice for those matters.' ***Servicemaster of Salina*** [***v. United States***, No. 11-1168-KHV-GLR], 2012 WL 1327812, at *4 [(D. Kan. April 17, 2012)] 'Differences between the parties in the legal interest make the interests non-identical, and thus make the common interest exception inapplicable.' *Id.*
>     Cessna Finance and Textron have arguably established a 'common desire for the same outcome' of this litigation. *See* ***Beltran*** [***v. Interexchange, Inc.***,] 2018 WL 839927 at * 4 [(D. Colo. Feb. 12, 2018)]; ***Service-master of Salina***, 2012 WL 1327812 at *3. This is not, however, sufficient to establish a common interest as necessary for application of the joint defense doctrine. *Id.* Simply stated, to the extent Cessna Finance and/or Textron have waived the protections of the attorney-

> client privilege and/or the work product doctrine by
> sharing information with persons outside of the
> protection, they cannot use the joint defense privilege as
> an exception to the underlying waiver(s).

(*Id*., at 8-9.)

Textron and Cessna move the Court for clarification and/or reconsideration of the underlying Order.[2] (Doc. 140, at 1; Doc. 141, at 1-2.) JetSuite opposes the motions. (Doc. 143.) The parties positions are more specifically summarized *infra*.

## ANALYSIS

**I.  Standards On Motions to Reconsider.**

District of Kansas Local Rule 7.3(b) governs motions to reconsider. It states, in relevant part, that "[a] motion to reconsider must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." The Tenth Circuit, and subsequently this District, has held that "[r]evisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advanc[ing] new arguments or supporting facts which were otherwise available for presentation when the original … motion was briefed' is likewise inappropriate." **Van Skiver v.**

---

[2] Textron has filed a correlating motion in the Textron case. (*See* No. 18-1187, Doc. 151.)

4

*United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (citation omitted), (affirming District Court's denial of motion to reconsider decision on summary judgment motion), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).; *see also Comeau v. Rupp*, 810 F.Supp. 1172 (D.Kan.1992) (citing *Van Skiver*, *supra*).

## II.    Positions of the Parties.

Textron asks the Court for "clarification that, although the Court found [Textron and Cessna] do not have identical interests such that they can claim protection under a joint defense agreement, the Court's Order does not compel production of attorney work product." (Doc. 140, at 1.)  Textron also seeks reconsideration of the Court's Order "to correct clear error and prevent manifest injustice that would occur should [Textron] be forced to turn over the mental impressions of its counsel, prepared specifically for purposes of this and related litigation." (*Id.*)

Cessna makes similar arguments, contending that "the Court should reconsider its erroneous ruling that [Cessna and Textron] do not have a joint-defense relationship with regard to the allegations made in this case against those parties by JetSuite, Inc. and related entities (the JetSuite parties)." (Doc. 141, at 1.) Cessna asks the Court, as an initial matter and "at a minimum, to clarify that its Order was not intended to require production of work-product protected

communications between counsel for [Cessna] and counsel for [Textron] regarding the defense of JetSuite's claims." (*Id.*, at 1-2.)

JetSuite responds that Cessna's and Textron's requests for "clarification" are really thinly-disguised attempts to get the Court to reverse itself. JetSuite points out that the prior Order "rejected" the argument by Cessna and Textron that they could "exchange work product under the joint defense exception to waiver … ." (Doc. 143, at 2.) According to JetSuite, the request "to 'Clarify' really meant [Cessna and Textron] could continue withholding every one of those communications if they are work product." (*Id.*) JetSuite continues that the prior Order "applied equally to attorney-client privilege and work product protections" and stated "to the extent Cessna Finance and/or Textron have waived the protections of attorney-client privilege and/or the work product doctrine by sharing information with persons outside the protection, they cannot use the joint defense privilege as an exception to the underlying waiver(s)." (*Id.* (quoting Doc. 135, at 9).)

The Court notes that, in the underlying motions, Textron and Cessna have attempted to discuss the issues the issues of "clarification" and "reconsideration" separately. That stated, the arguments overlap significantly. Within this context, the Court will attempt to address the issues of "clarification" and "reconsideration" individually.

## III. Clarification.

Textron states that "the only documents being withheld are: (1) communications between their outside litigation counsel related to the defense of the litigation; and (2) communications between in-house counsel related to the defense of the litigation." (Doc. 140, at 2; Doc. 141, at 4-5.) The Court agrees with Textron that such "communications are not privileged as they do not involve communications between lawyers and their clients," but instead constitute "work product because they contain the strategy discussions of lawyers in their effort to jointly defend the litigation." (*Id.*)

Textron and Cessna both rely on the District Court of Kansas decisions of *Lawson v. SpiritAeroSystems, Inc.*, 410 F.Supp.3d 1195 (D. Kan. 2019) and *Pipeline Productions, Inc. v. Madison Companies, LLC*, No. 15-4890-KHV-ADM, 2019 WL 3973955 (D. Kan. Aug. 22, 2019) for the proposition that the protections of the work product doctrine are not waived as a result of sharing between counsel for non-adversarial parties. (Doc. 140, at 2-4 and 141, at 3-6 (both citing) The *Lawson* court in particular held that

> [a]lthough voluntarily disclosing attorney-client privileged communications to third parties generally waives privilege, 'it does not necessarily waive work-product protection.' *Pipeline Prods., Inc. v. Madison Cos.*, No. 15-4890-KHV-ADM, 2019 WL 2106111, at *3 (D. Kan. May 14, 2019). Courts generally consider instead 'whether the voluntarily disclosure was 'to an adversary or a conduit to an adversary[.]' ' *Id.* (alteration

> in original).  '[O]nly disclosures that are 'inconsistent with the adversary system' are deemed to waive work-product protection.'  *Id.* (quoting 2 EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 1286 (6th ed. 2017)).  The party claiming waiver of work-product protection has the burden to establish waiver.  ***Johnson*** [***v. Gmeinder***], 191 F.R.D. 638, 643 (D. Kan. 2000).

410 F.Supp.3d, at 1208-09.  In ***Lawson***, Spirit, the party claiming the waiver, did not claim that parties sharing the documents were adversaries or that they had disclosed to adversaries documents protected by the work-product doctrine.  *Id.*  That stated, the ***Lawson*** court found that the work product protection had not been waived.

Textron contends that even assuming its interests were not "identical" to those of Cessna, they are "not adversaries such that communication between their lawyers in order to cooperate in the defense of the identical counterclaims and defenses asserted against them should be deemed a waiver of work product protection." (Doc. 140, at 5 (citations omitted).)  Cessna makes a verbatim argument.  (Doc. 141, at 6.)

JetSuite responds that "unlike the parties in [the] ***Pipeline*** and ***Lawson***" cases, Cessna and Textron "are sufficiently adverse to waive any work product privilege upon sharing communications with each other." (Doc. 143, at 4.)  JetSuite continues,

> [w]hen one party claims it has no responsibility for the actions of the other, their interests are not aligned, and they are not entitled to joint defense. The Court voiced this view at the hearing and said so explicitly in its Order. (Doc. 135, at 8) (noting skepticism of joint defense claim when 'the primary position of [Cessna] is that it is not liable for the actions of Textron'). Beyond that, [Textron] must pay [Cessna] 10% of the loan balance if it is shown that JetSuite defaulted. Textron's Answer and Counterclaim to JetSuite's Amended Counterclaim, Doc. 50, at 42 ¶ 9. [Textron] thus has a seven-figure stake in JetSuite's success against CFC, and that is adversity in any Court.

(*Id*.)

Cessna calls this argument "hogwash," arguing that

> [t]he documents establish that [Textron] is obligated to pay [Cessna] 10% of the loan balance if the loan is not paid for any reason, regardless of whether JetSuite prevails against [Cessna or Textron]. JetSuite has obviously not paid [Cessna] on its loan, and, in fact, [Textron] long ago made the 10% payment to [Cessna] and has no claim against [Cessna] to get it back. (Doc. 50 at p. 42, ¶ 12). JetSuite, in essence, argues that follows the ***Pipeline*** opinion, *supra*, [Textron's] interest in this litigation is to help JetSuite prove that it is not in default to [Cessna], but this means that [Textron] would be helping prove that [Textron] defrauded JetSuite – all to avoid the 10% payment that it has already made, does not dispute is owed, and does not seek return of from [Cessna], in this case. Just saying this out loud points to the absolute absurdity of JetSuite's position. [Textron] is adverse to JetSuite, not to [Cessna].

(Doc. 153, at 5.)³

The Court clarifies its prior Order to indicate that it holds that the communications by counsel are clearly work product, consistent with the *Pipeline* opinion, *supra*. Further, as stated above, Textron and Cessna admit that the communications at issue "are work product because they contain the strategy discussions of lawyers in their effort to jointly defend the litigation." (Doc. 140; *see also* Doc. 141, at 4-5.) The Court finds that the relationship between Textron and Cessna, though not of identical legal interest, is not adversarial in the sense that it would invoke a waiver of the work product doctrine. In other words, these documents need not be produced.

The Court also acknowledges the representation of counsel for Textron and for Cessna that those are the only documents being withheld. As such, even though these communications should have been enumerated in a compliant

---

³ The Court acknowledges JetSuite's argument Textron and Cessna could have cited cases like *Lawson* and *Pipeline* in its prior briefing, but did not. (Doc. 143, at 4.) It is well-established in this District that "[a] party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider." *Eastman v. Coffeyville Res. Refin'g & Markt'g*, No. 10-1216, 2011 WL 972487, at *1 (D.Kan. March 16, 2011) (quoting *Cline v. S. Star Cent. Gas Pipeline*, 370 F.Supp.2d 1130, 1132 (D.Kan.2005)). "A motion for reconsideration is not a vehicle for the losing party to rehash arguments previously considered and rejected." *Webster Cap. Fin., Inc. v. Newby*, No. 12-2290-EFM, 2014 WL 672930, at *1-2 (D. Kan. Feb. 21, 2014)). That stated, the Court finds *Lawson* and *Pipeline* to be instructive.

privilege log initially, to do so at this point at this point would serve no purpose other than to waste the time of counsel.[4]  No supplemental privilege log is required.

## IV. **Reconsideration.**

Textron and Cessna next argue that the Court should reconsider its prior Order "to correct clear error and prevent manifest injustice." (Doc. 140, at 5-6; Doc. 141, at 6-7.)  They contend that the Court was clearly in error by finding that it could not avail itself of the joint defense privilege with Cessna because Court found that their interests were not "identical." (*Id.*)  Textron continues that it was error for the Court to find that it does not share an identical legal interest with Cessna because Cessna is of the position that it is not liable for Textron's actions. (*Id.*, citing Doc. 135, at 8.)  Textron argues that this is not problematic because it "agrees with [Cessna's] position" that Cessna is not liable for Textron's actions. (*Id.*, at 6.)

The Court finds this reasoning to be circular and nonsensical.  In essence, Textron is basically contending that there is a common legal interest with Cessna

---

[4] JetSuite argues that even if the Textron and Cessna have an identical legal interest entitling them to the protections of the joint defense doctrine, they have waived the protection by failing to provide a privilege log. (Doc. 143, at 5.)  It is well-established in this District that "[t]he objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability." ***Leftwich v. City of Pittsburg, Kansas***, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citations omitted).  That stated, the Court does not find that Textron and Cessna have waived the protections of the work product doctrine by the failure to provide a privilege log.

because the parties agree that Cessna does not share an identical legal interest with Textron.  Needless to say, the Court finds this argument unpersuasive.

Textron continues that it and Cessna "have exactly the same legal interest in defeating the counterclaims and defenses raised by Superior Air and the JetSuite Defendants as to alleged knowledge of and failure to disclose some propensity for CJ3s to develop lavatory-based corrosion."  (Doc. 140, at 6.)  Cessna argues that

> [t]hroughout the Counterclaims, JetSuite refers to [Cessna and Textron] as one and the same and alleges each is liable for the acts of the other. The Counterclaims themselves demonstrate conclusively that [Cessna and Textron] are defending common claims made against them, grounded upon JetSuite's overarching allegation that [Cessna and Textron] are one and the same, acting jointly as the agents of each other.

(Doc. 141, at 7.)  That stated, Cessna then asserts, **in bold type**, that Cessna and Textron "**dispute JetSuite's claims that they are one and the same** … ."  (*Id.* (emphasis in original).)  Cessna contends, however, that this "**cannot destroy their common interest in defending those identical claims**."  (*Id.* (emphasis in original).)   The Court is equally skeptical of Cessna's reasoning.

As stated in the Court's underlying Order, "'[a] common commercial interest and a common desire for the same outcome in a legal matter are not sufficient to establish a common interest.'"  (Doc. 135, at 4 (citing ***Beltran v. Interexchange, Inc.***, 2018 WL 839927, *4 (D. Colo. Feb. 12, 2018) (citing ***In re Urethane Antitrust Litigation***, MDL No. 1616, 2013 WL 4781035, *2 (D. Kan.

Sept. 5, 2013) and *United States v. Hudson*, No. 13-20063-01-JWL, 2013 WL 4768084, *2 (D. Kan. Sept. 5, 2013)).) "A 'community of interest' exists 'where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice ... The key consideration is that the nature of the interest be identical, not similar.'" *Beltran*, 2018 WL 839927, *4 (citation omitted). Based on the arguments raised in the parties' briefing of the current motion, the Court finds that this proposition is still inapplicable to Cessna and Textron.

JetSuite responds that although Textron and Cessna claim clear error in the underlying Order, they have "yet provide[d] no authority – new, binding, or otherwise – to support" such a finding. (Doc. 143, at 3.) JetSuite continues that

> nothing from the United States District Court for the District of Wyoming or any other non-binding precedent constitutes contrary authority sufficient to show clear error. That one such decision remarks, in a footnote no less, that the distinction between "common interest" and 'joint defense' protections can be 'imprecise' does not even come close. (Doc. 140, at 6; Doc. 141, at 8) (citing *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, n.3 (D. Wyo. 2016). In this Court, it remains the rule that joint-defense/common-interest protection requires identical legal interests between the parties involved. *Servicemaster of Salina, Inc. v. United States*, No. 11-1168-KHV-GLR, 2012 WL 1327812 at *3 (D. Kan. Apr. 17, 2012); *United States Fire Ins. Co. v. Bunge N. Am. Inc.*, No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006).

(*Id.*)

13

As stated above, JetSuite also points out that Textron is required to pay to Cessna "10% of the loan balance if it is shown that JetSuite defaulted." (Doc. 143, at 6 (citing Doc. 50, at ¶ 9.) As such, according to JetSuite, Textron "has a seven-figure stake in JetSuite's success against" Cessna which, according to JetSuite "is adversity in any Court."

As discussed in the underlying Order (Doc. 135), the undersigned Magistrate Judge agrees that the legal interest existing between Textron and Cessna is clearly not "identical." As such, there is no clear error or manifest injustice in the Court's prior decision that the common interest privilege does <u>not</u> apply to the documents at issue. The Court thus **DENIES** the portions of the motions filed by Textron (Doc. 140) and Cessna (Doc. 141) seeking reconsideration.

**IT IS THEREFORE ORDERED** that the Motions filed by Textron (Doc. 140) and Cessna (Doc. 141) are **GRANTED** as to their requests for clarification and **DENIED** as to their requests for reconsideration.

IT IS SO ORDERED.

Dated this 14th day of April, 2020, at Wichita, Kansas.

                                        S/ KENNETH G. GALE
                                        HON. KENNETH G. GALE
                                        U.S. MAGISTRATE JUDGE